UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BAKER HUGHES INCORPORATED, *et al*, § § Plaintiffs, § vs. § § BNY MELLON CAPITAL MARKETS LLC; § fka MELLON FINANCIAL MARKETS LLC, § *et al*, § § Defendants. § | CIVIL ACTION NO. H-09-CV-1446 |

# MEMORANDUM OPINION & ORDER

## I.     INTRODUCTION

Pending before the Court is the respondents', BNY Mellon Capital Markets, LLC ("BNY") and Pershing LLC ("Pershing") (collectively, the "respondents"), Rule 12(b)(1) motion to dismiss and alternative, Rule 12(b)(6) motion to dismiss (Docket Entry No. 13). The petitioners', Baker Hughes Inc. ("BHI") and Baker Hughes Treasury Services GMBH ("BHTS") (collectively, "Baker Hughes") have filed a memorandum of law in opposition to the respondents' motion (Docket Entry No. 19) and the respondents have filed a reply (Docket Entry No. 20). After having carefully considered the motion, response, reply, the pleadings and applicable law, the Court determines that the respondents' motion to dismiss should be GRANTED.

## II.    FACTUAL OVERVIEW

On December 19, 2008, Baker Hughes commenced arbitration proceedings against the respondents by filing a statement of claim with the FINRA[1] for damages arising out of the respondents' alleged misrepresentations and omissions in connection with their sale of certain auction rate securities[2] to Baker Hughes in March and August of 2007.  Bakers Hughes commenced its action against the respondents as an arbitration rather than litigation in accordance with certain contractual provisions governing its brokerage accounts, requiring that any claims it had against the respondents arising out of such accounts be submitted to arbitration. Thereafter, in accordance with the FINRA's procedures, BHI, BHTS, BNY and Pershing each executed a Uniform Submission Agreement consenting to "submit the . . . matter in controversy, as set forth in [Baker Hughes' statement of claim] . . . to arbitration in accordance with the Constitutions, By-laws, Rules, Regulations, and/or *Code of Arbitration Procedure* of the sponsoring organization [*i.e*., FINRA]."  (Docket Entry No. 1, ¶ 17) (emphasis in original). Pursuant to the FINRA Code, by letter dated March 5, 2009, the Director of FINRA Dispute Resolution (the "Director") advised the parties that their dispute would be heard by a panel of three arbitrators, provided them with lists of arbitrator candidates and instructed them to sign and return their list of preferences by no later than March 25, 2009.  The Director's letter further cautioned as follows:  "**If we do not have your list on or before the return date, you will be deemed to have accepted all Arbitrators on the list**."  (Docket Entry No. 1, Ex. C, attached thereto as Ex. 5).  Under the FINRA Code, "[i]f the Director does not receive a party's ranked

---

[1] "FINRA" stands for the Financial Industry Regulatory Agency.  The FINRA is the successor entity to the National Association of Securities Dealers, Inc. ("NASD").  It was created in July of 2007 through the consolidation of the NASD and the member regulation, enforcement and arbitration functions of the New York Stock Exchange.  (*See* Docket Entry No. 13 at 1. ; *see also* Docket Entry No. 1).

[2] "Auction rate securities are long-term debt instruments, usually with a 30-year maturity date, which have a variable interest rate that is set in periodic 'Dutch' auctions."  (Docket Entry No. 13 at 2.)

lists within [the time period allotted] the Director will proceed as though the party did not want to strike any arbitrator or have any preferences among the listed arbitrators." (Docket Entry No. 1 at Ex. H, FINRA Rule 12404(c)).

On March 24, 2009, Baker Hughes submitted its arbitrator rankings to the Director. The respondents, however, did not submit their arbitrator rankings to the Director until April 1, 2009--six days after the deadline. Baker Hughes contends that the respondents only submitted their arbitrator rankings at this time due to an *ex parte* e-mail from the Director to their counsel on March 31, 2009, prompting their submission. Specifically, the e-mail stated, "Mr. Canellos, I am writing in regards to the arbitrator ranking form which was due to FINRA on March 25, 2009. I have not received a copy of your arbitrator ranking form. Please provide me with a status. Thank you." (Docket Entry No. 1, Ex. C, attached as Ex. 6.)

Thereafter, by e-mail dated April 1, 2009, respondents' counsel contacted Baker Hughes' counsel to inquire as to whether Baker Hughes would be willing to consent to change venue for the parties' arbitration from Houston, Texas to New York, New York, where their lawyers are located and most of their witnesses reside. In response to an e-mail inquiry from the respondents' counsel, Baker Hughes' counsel advised that it wished to maintain venue for the hearing in Houston because Baker Hughes' personnel and many of its witnesses reside in Houston. Approximately an hour later, respondents' counsel telephoned Baker Hughes' counsel re-urging their request to change venue, advising that the respondents had failed to timely submit their arbitrator rankings to the Director and requesting that Baker Hughes consent to their late submission of their arbitrator ranking forms. In exchange for Baker Hughes' agreement to extend the time period within which the respondents could submit their arbitrator rankings, respondents' counsel advised that the respondents would forgo filing a motion to change venue.

Later that same day, Baker Hughes' counsel telephoned respondents' counsel and informed him that Baker Hughes would not consent to the respondents' late submission of their arbitrator rankings.

On April 2, 2009, the respondents' counsel submitted a letter to the FINRA requesting, pursuant to FINRA Rule 12207(c),[3] an extension for good cause, by five business days, of the time period within which to timely submit their arbitrator rankings. Baker Hughes asserts that, by way of respondents' counsel's letter dated April 2, 2009, it learned for the very first time that instead of applying FINRA Rule 12404, the Director had provided respondents' counsel with an *ex parte* e-mail which, in turn, prompted them to submit their arbitrator rankings, attempt to obtain Baker Hughes' consent to a baseless motion to change venue and further attempt to extort Baker Hughes' consent to permit their late-filed arbitrator rankings. By letter dated April 4, 2009, the respondents moved for a change of venue for the arbitration from Houston, Texas to New York, New York, pursuant to FINRA Rule 12213(a)(3). On April 13, 2009, Baker Hughes submitted its opposition to the respondents' motions for extension and for change of venue and further requested sanctions against the respondents, including reimbursement of its attorneys' fees and costs associated with responding to the respondents' motions.

On April 16, 2009, the FINRA Case Administrator advised the parties that "[i]n accordance with the Code of Arbitration Procedure, Rule 12207, on behalf of the Director of Arbitration, the request to extend the due date for the Arbitrator Ranking Forms is granted. The Arbitrator Ranking Forms received are accepted and will be consolidated for arbitrator appointment." (Docket Entry No. 1, Ex. E.) It also stated that "[i]n accordance with the Code of Arbitration Procedure Rule 12213, on behalf of the Director of Arbitration, the request to change

---

[3] FINRA Rule 12207(c) provides, in pertinent part, that "[t]he Director may extend or modify any deadline or time period set by the Code for good cause."

venue has been denied." (*Id.*) It further noted that the respondents may re-urge their motion to change venue before the arbitrator panel in accordance with FINRA Rule 12213. (*Id.*) The next day, the FINRA Case Administrator forwarded a letter to the parties advising, *inter alia*, of the composition of the arbitration panel, which included the respondents' arbitrator preferences.

On May 13, 2009, Baker Hughes filed its petition in this Court seeking an order compelling arbitration before a lawfully constituted panel in accordance with the FINRA Code. The respondents now move to dismiss Baker Hughes' petition pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).

## III. STANDARDS OF REVIEW

### A. Standard Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted). Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *See*, *e.g.*, *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). Therefore, the party seeking to invoke the jurisdiction of a federal court carries the burden of proving its existence. *Stockman*, 138 F.3d at 151; *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In reviewing a motion to dismiss for lack of subject matter jurisdiction, a district "court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (citing

*Land v. Dollar*, 330 U.S. 731, 735 & n. 4, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947)). It may base its disposition of such a motion on any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Montez*, 392 F.3d at 149 (citing *Robinson v. TCI/US W. Commc'ns, Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)). In this regard, "no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez*, 392 F.3d at 149. Nevertheless, the burden of proof that jurisdiction does exist remains with the plaintiff. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

  **B.**  **Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Id.* at 563, 1969 n.8 (citing *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

## IV.   ANALYSIS AND DISCUSSION

In this case, Bakers Hughes has filed a petition to compel arbitration pursuant to 9 U.S.C. § 4, alleging that the respondents have refused to arbitrate before a lawfully constituted panel comprised of arbitrators selected pursuant to the FINRA Code of Arbitration Procedure ("FINRA Code"), in spite of the parties' arbitration agreement mandating such.  It argues that the relief it seeks is appropriate and necessary in this instance because the Director's actions, taken on behalf of the respondents, constitute flagrant and egregious breaches of the FINRA Code.  It further contends that by way of its conduct, the Director has wrongly tilted the arbitration playing field in favor of the respondents, FINRA member firms, despite their failure to follow the FINRA's rules.  As a consequence, it contends that it is entitled to a judgment in its favor as well as the appointment of an arbitration panel consistent with its timely filed submissions as provided for by the FINRA Code.

In contrast, the respondents contend that Baker Hughes' petition must be dismissed because the decision it seeks to appeal is beyond the scope of judicial review.  Specifically, they contend that Baker Hughes consciously ignores controlling judicial precedent establishing that judicial review of arbitrations is limited to narrowly circumscribed "gateway questions of arbitrability"—not to procedural matters such as timing, waiver, delay or other like defenses. They further maintain that they have not refused to arbitrate within the meaning of the statute nor have they disagreed on a method for selecting the arbitrators.  Accordingly, the respondents contend that the great weight of judicial authority prohibits this Court from intervening in the emerging arbitration.  This Court agrees.

Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, sets forth the rules governing a district court's role in the arbitration process prior to the issuance of an arbitration award. It provides, in pertinent part, as follows:

> *A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate* under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added). Pursuant to this provision, once a party petitions a district court to compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 5 of the FAA further provides that a court shall, upon the application of any party to the controversy, intervene to designate and appoint an arbitrator or umpire to act under the arbitration agreement "with the same force and effect as if he or they had been specifically named therein" in circumstances where "no method [of naming or appointing an arbitrator or arbitrators or an umpire] be provided [within the arbitration agreement], or if a method be provided and any party thereto . . . fail[s] to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy." 9 U.S.C. § 5.

"Under the FAA, jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited." *Gulf Guar. Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002) (citing *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001)). More specifically, "[c]ourts are limited to determinations regarding

whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement, including the arbitrability of given underlying disputes under the agreement." *Gulf Guar.*, 304 F.3d at 486 (citing at *Werries*, 253 F.3d at 1085 – 86) ("'[A] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided.'") (quoting *Great Western Mtg. Corp. v. Peacock*, 110 F.3d 222, 230 (3d Cir. 1997)); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991) ("Our role is strictly limited to determining arbitrability and enforcing agreements to arbitrate. . . .")). To this end, the United States Supreme Court has emphasized that issues or "questions of arbitrability" include those instances "where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 - 84, 123 S. Ct. 588, 592, 154 L. Ed.2d 491 (2002). Thus, "a gateway dispute about whether the parties are bound by a given arbitration clause" or "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" raises a "question of arbitrability" to be decided by a court. *Id.* at 84, 123 S. Ct. at 592 (internal citations omitted).

The Supreme Court has also pointed out that "questions of arbitrability" are inapplicable in "general circumstance[s] where parties would likely expect that an arbitrator would decide the gateway matter," such as in matters where the "'procedural' questions . . . [arise] out of the dispute and bear on its final disposition." *Id.* at 84, 123 S. Ct. at 592 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546 – 47, 84 S. Ct. 909, 11 L. Ed.2d 898 (1964)). Such questions "are presumptively *not* for [a] judge, but for an arbitrator, to decide." *Id.* (emphasis in

original). Equally so, "allegation[s] of waiver, delay, or a like defense to arbitrability" should also be decided by an arbitrator. *Howsam*, 537 U.S. 79, 84, 123 S. Ct. at 592 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 - 25, 103 S. Ct. 927, 74 L. Ed.2d 765 (1983)).

The Fifth Circuit has further reasoned that "challenges to the procedural aspects of arbitration are for the arbitrator to decide, while challenges to the substantive arbitrability of disputes are for the courts to decide." *Gulf Guar.*, 304 F.3d at 487 (citing *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753 - 54 (5th Cir. 1995) (finding that a party's claim that arbitration was time-barred was a proper dispute regarding arbitration procedure for the arbitrator where rules regarding timeliness were incorporated into the agreement to arbitrate and the parties agreed to have any dispute between them resolved by arbitration) (other citations omitted)). In adopting the Fourth Circuit's reasoning as explained in *Hooters of Am., Inc. v. Phillips*, the Fifth Circuit employs the following rule: "[g]enerally, objections to the nature of arbitral proceedings are for the arbitrator to decide in the first instance . . . [f]airness objections should generally be made to the arbitrator subject only to limited *post-arbitration* judicial review as set forth in section 10 of the FAA.'" *Gulf Guar.*, 304 F.3d at 487 (quoting *Hooters of Am.*, 173 F.3d 933, 940 - 41 (4th Cir. 1999) (emphasis added)).

Based on the aforementioned controlling authority, this Court finds no authority inherit in the FAA or case law for it to entertain Baker Hughes' petition prior to the issuance of an arbitration award. Indeed, the respondents have not refused to arbitrate within the meaning of 9 U.S.C. § 4 nor has any "default" in the arbitration procedure occurred. *See LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d. Cir. 2004) (quoting *Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d. Cir. 2004) (internal citation omitted) ("A party has refused to arbitrate if it

'commences litigation or is ordered to arbitrate th[e] dispute [by the relevant arbitral authority] and fails to do so.'")); *see also PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995) (holding that "an action to compel arbitration under the [FAA] accrues only when the respondent unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute"). Moreover, Bakers Hughes makes no challenge to the making or validity of the arbitration agreement nor does it insinuate that the arbitration agreement is void, unenforceable or warrants rescission. Instead, it argues that the respondents have failed to follow the method for appointing arbitrators specifically delineated in the parties' arbitration agreement and that the FINRA Director has sanctioned the respondents' conduct, despite its lack of authority to do so.

Based on the record, however, the Court cannot say that such a failure has occurred, especially in light of the fact that no precise agreement exists among the parties *explicitly* delineating a particular method for naming and/or appointing arbitrators in this case. Indeed, it is undisputed that pursuant to the Uniform Submission Agreement executed by the parties, each party consented to submit the controversy set forth in Baker Hughes' statement of claim "to arbitration in accordance with the Constitutions, By-laws, Rules, Regulations, and/or *Code of Arbitration Procedure* of the sponsoring organization [*i.e.*, FINRA]." (Docket Entry No. 1, ¶ 19.) The fact that the parties agreed that the arbitration would be governed by the FINRA Code, without more, does not necessarily suggests that the parties' arbitration agreement incorporated the FINRA Code or contained a *specific* method for naming and/or appointing arbitrators. *See Bulko v. Morgan Stanley*, 450 F.3d 622, 625 (5th Cir. 2006). Additionally, even assuming that the FINRA Code is incorporated into the parties' arbitration agreement as Baker Hughes insinuates, the FINRA Code includes various other rules concerning the appointment, removal

12 / 14

and replacement of arbitrators, including FINRA Rule 12412, entitled "Director's Discretionary Authority," which provides that "[t]he Director may exercise discretionary authority and make any decision that is consistent with the purposes of the Code to facilitate the appointment of arbitrators and the resolution of arbitrations." (Docket Entry No. 1, Ex. H)

Here, Baker Hughes attempts to assert a challenge that essentially extends to the procedural aspects of arbitration, namely the arbitration selection process and the alleged unfairness of that process. Thus, in substance, the issue presented in this action is a procedural one to be determined by the arbitrators, not by this Court at this juncture. Therefore, Bakers Hughes is not entitled to an order compelling arbitration in this instance because it has not demonstrated that: (1) it is an "aggrieved party" as it must be to invoke § 4; (2) the respondents have "failed, neglected or refused" to arbitrate within the meaning of § 4; (3) a failure to follow a *specific* method for naming and/or appointing arbitrators as set forth in the parties' arbitration agreement has occurred; or (4) a lapse in the naming of arbitrators or in filling a vacancy has occurred within the meaning of § 5.

Further, even assuming *arguendo* that Baker Hughes has satisfied the prerequisites of § 4 sufficient to commence a petition compelling arbitration in this instance, this Court is of the opinion that it lacks subject matter jurisdiction over this dispute. Although § 4 provides for the filing of a petition to compel arbitration, it does not, nor does any other section of the FAA, establish an independent basis for federal jurisdiction. *Smith v. Rush Retail Ctrs., Inc.*, 360 F.3d 504, 505 (5th Cir. 2004) (citing *Moses H. Cone*, 460 U.S. at 25 n.32, 103 S. Ct. 927). "In short, for a federal court to enter an order to compel arbitration under § 4, 'there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.'" *Id.*; *see also Prudential-Bache Sec., Inc. v. Fitch,* 966 F.2d 981, 987 (5th Cir. 1992) (explaining

that "*Moses Cone* establishes definitively that the FAA does not provide an independent basis for federal jurisdiction"). Because complete diversity of citizenship is non-existent among the parties in this case and the petition, on its face, does not appear to assert a federal question or some other independent basis for federal jurisdiction, this Court lacks subject matter jurisdiction over this action and the petition must be dismissed.

V.      **CONCLUSION**

Based on the foregoing discussion, the Court determines that Baker Hughes' petition to compel arbitration is DENIED; and the respondents' motion to dismiss is GRANTED.

It is so **ORDERED.**

SIGNED at Houston, Texas this 16th day of March, 2010.

_____
Kenneth M. Hoyt
United States District Judge